MARK D. BRUTZKUS - Bar No. 128102
NICHOLAS A. ROZANSKY - Bar No. 219855
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:(818) 827-9099
Email:    mbrutzkus@ebg-law.com
         nrozansky@ebg-law.com

Attorneys for Defendants
BRETT STETTNER, individually; BRETT STETTNER D/B/A WINSTON-
STETTNER

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2012 MAR -9 PM 3:40
BY

FILED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DIANE BREITMAN D/B/A QUEEN
OF DIAMONDS,

                    Plaintiff,

    vs.

BRETT STETTNER,
INDIVIDUALLY, BRETT
STETTNER D/B/A WINSTON-
STETTNER, AND DOES 1 TO 5,

                    Defendants.

Case No.

**CV12 02034 PSG PJWx**

**BRETT STETTNER,
INDIVIDUALLY, AND BRETT
STETTNER D/B/A WINSTON-
STETTNER'S NOTICE OF
REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT COURT**

[Los Angeles County Superior Court Case
No. BC478146]

556886
3448.001

**TO THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF DIANE BREITMAN D/B/A QUEEN OF DIAMONDS AND TO HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendants Brett Stettner, an individual, and Brett Stettner d/b/a Winston-Stettner hereby remove to this Court the state court action described below on the following grounds:

1.      On February 1, 2012, an action was commenced in the Superior Court of the State of California in and for the County of Los Angeles, entitled Diane Breitman d/b/a Queen of Diamonds, Plaintiffs, vs. Brett Stettner, individually, Brett Stettner d/b/a Winston Stettner, and DOES 1 to 5, Defendants, as case number BC478146.  A copy of the complaint is attached hereto as Exhibit "A."  The first date upon which defendants received a copy of said complaint was 2/10/2012, when defendants were served with a copy of said complaint and a summons from the state court.  A copy of the summons is attached hereto as Exhibit "B."

2.      This matter is a civil action which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because Plaintiff claims direct breach of contract damages in the minimum amount of $420,000.  (Complaint,  14:8-9)

3.      Complete diversity of citizenship exists in that Plaintiff, Diane Breitman d/b/a Queen of Diamonds, is a citizen of the State of California; and Defendants, Brett Stettner, and Brett Stettner d/b/a Winston-Stettner, is a citizen of the State of Texas now and was so at the time of service.   There are no other defendants.

///
///
///
///
///
///
///
///
///

BRETT STETTNER'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

556886
3448.001

1       4.     All of the process and order obtained by Defendants are attached hereto

2 as Exhibit "C".

3                                                          Respectfully submitted,

4 Dated: March 9, 2012                 EZRA BRUTZKUS GUBNER LLP

6                                     By:  _____

7                                     NICHOLAS A. ROZANSKY

8                           Attorneys for Defendants, BRETT
STETTNER, individually; BRETT
STETTNER D/B/A WINSTON-
STETTNER

556886
3448.001

# EXHIBIT A

A6029
90272
DEPT # 37
(HON. JOANNE O'DONNELL)

Timothy F. Umbreit, Esq. (SBN: 145932)
Reid Breitman, Esq. (SBN: 179355)
Corporate Legal Services, LLP
17606 Camino de Yatasto
Pacific Palisades, CA 90272

**FILED**
Los Angeles Superior Court

Phone: 310-701-5517
Fax: 310-977-2110

FEB 01 2012

rbreitman@roadrunner.com
tim@timumbreit.com

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

Attorneys for: Diane Breitman

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES (CENTRAL DISTRICT)

| | |
|---|---|
| DIANE BREITMAN D/B/A QUEEN OF DIAMONDS<br><br>Plaintiff,<br><br>vs.<br><br>BRETT STETTNER, INDIVIDUALLY, BRETT STETTNER D/B/A WINSTON-STETTNER, AND DOES 1 TO 5<br><br>Defendants. | Case No.: **B C 4 7 8 1 4 6**<br><br>COMPLAINT FOR:<br><br>1) BREACH OF CONTRACT;<br>2) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;<br>4) FRAUD;<br>5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>UNLIMITED CIVIL<br>(Damages Claimed are in Excess of $25,000)<br><br>Demand for Jury Trial. |

CIT/CASE: BC478146 LEA/DEFH;
RECEIPT #: CCH481620069
DATE PAID: 02/01/12
PAYMENT: $395.00
RECEIVER: CHECK:
          CASH;
          CHANGE;
          CARD;
                    395.00
                    02:50.23 PM
                    0310

Complaint

1   The Plaintiff, Diane Breitman d/b/a Queen of Diamonds, sues the Defendants, Brett Stettner,

2   individually, Brett Stettner d/b/a Winston-Stettner, and Does 1 to 5, inclusive for the causes of

3   action as set forth herein and states:

### INTRODUCTION

This lawsuit is about the 12th largest diamond in the world, a 230 carat White Pear Shape Diamond Cartier Necklace known as the **Wynn Diamond** and the ill-fated $23,500,000 private sale agreed upon in June 2011.  The world renowned Queen of Diamonds brokered a sale of the Wynn Diamond to a Texas "Large Diamond Dealer" named Brett Stettner, who despite what he promised, and despite his representations that he was the actual buyer, couldn't pull it off.  Not only did Stettner renege on his contract, he misrepresented both his ability to pay the price in the first place, and also that he was the true buyer, when, in fact, he was only acting as a broker. Then he reneged on his settlement agreement.  Then he lied about being the new owner of the diamond, casting an air of suspicion and mistrust over the whole transaction and those involved, and making it much more difficult for Diane Breitman to sell the Wynn Diamond to any of several qualified buyers who were interested.  Finally, he then conspired with others to send "fake" buyers to Diane Breitman in an successful scheme to waste her time, and discredit her and cause Steve Wynn, the seller, to fire Diane Breitman as the exclusive selling agent.

### THE PARTIES

1.  The Plaintiff, Diane Breitman (hereinafter referred to as the Plaintiff or Breitman) is not only known by reputation as the Queen of Diamonds, she has done business for approximately 40 years under that name, and has built an excellent reputation as a top diamond dealer for over 50 years.  The Queen of Diamonds is the registered fictitious business name of Diane Breitman who is a resident of Los Angeles County, California.

2.  Defendant, Brett Stettner (hereinafter referred to as the Defendant or Stettner) is a resident of Harris County Texas and does business in Los Angeles County, California as Winston-Stettner.

3.  The true names and capacities, whether individual, corporate, association, representative or otherwise, of the defendants identified herein as Does 1 to 5, inclusive are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said Does when they have been ascertained. Each defendant, whether named or Doe acted as the agent or employee of the other and were at all times relevant herein acting in the scope of their respective agencies or employment.

**THE WYNN DIAMOND**

4.  After rough cutting a 581 carat diamond, it took the cutters in Antwerp more than two years to orient then polish the Wynn diamond, creating the magnificent 230.17ct pear shaped diamond, with color grade of "H" and clarity grade of "VS1." Two other stones were also cut from the same rough, a 6.00ct and a 2.00ct, both "F" color (the "Diamond"). (See Exhibit A).

5.  The stone is set in a Cartier necklace which reportedly cost over $1.0 million.

6.  The Wynn Diamond is owned by Wynn Resorts (Macau), SA, which is controlled by the famous gaming magnate, Steve Wynn.

**FACTUAL ALLEGATIONS**

7.  In late March early April of 2011 Steve Wynn approached Breitman to discuss the sale of the Wynn Diamond. He told Breitman that because he had decided not to name his new

hotel and casino in Macau the "Wynn Diamond," he no longer had use for the Wynn diamond, and wished to sell it.

8.  On April 14, 2011 Wynn and Breitman entered into an Exclusive Agency Agreement which states in pertinent part, "the Company [Wynn] recognizes that the Consultant [Breitman] can contribute to finding a suitable purchaser for the Diamond, and Consultant desires to offer the Diamond for sale to several currently interested potential purchasers, and to represent the Company in its efforts to sell the Diamond on an exclusive basis... During the Consulting Period, the Consultant shall use its reasonable and best efforts to identify potential purchasers of the Diamond, and negotiate the highest possible price on behalf of the Company.  The Consultant shall endeavor to create competing bids in an effort to maximize the ultimate sales price.  During the Consulting Period only, the Consultant shall be the Company's exclusive agent for purposes of selling the Diamond, and the Company shall refer any and all inquiries concerning the acquisition of the Diamond to Consultant...  In consideration for Consultant entering into this Agreement and the Services provided hereunder, the Company shall pay to Consultant a fee equal to six percent (6%) of the sale price of the Diamond, if the Company sells the Diamond to any purchaser identified to the Company by Consultant or her affiliates during the Consulting Period, or during the one year following termination of the Consulting Period.  Consultant shall provide to the Company a list of purchasers that were identified and solicited for bids.  The Company shall not be obligated to accept any offer to purchase the Diamond for less than $23,500,000."

9.  Breitman identified several potential purchasers for the Wynn Diamond, and she received very favorable interest.  She then decided that it would be in the best interest of her client,

Complaint

Wynn Resorts, to arrange for an exclusive, private auction of the Wynn Diamond. She determined that the best location for the private auction would be the JCK Las Vegas Jewelry Show (the "Show"), which is an annual event, touted as the largest jewelry show in the United States. The Show attracts high end jewelry dealers from all over the world with displays of large diamonds and other precious stones as well as settings on display for sale. As many of the largest and most prestigious dealers are already at the Show, and as there is excellent security, this seemed the best opportunity to invite selected, qualified buyers to view the Wynn Diamond and submit private offers. This was to be a silent auction, not a live auction.

10. Breitman then arranged the private auction to be held at the Show. She sent out special invitations to and made appointments with approximately 15 ultra high end buyers and dealers.

11. All these potential buyers were told by Breitman that the "first person to make an acceptable, binding, non-contingent offer would have the deal."

12. On or about June 2, 2011, in a suite at the Encore hotel in Vegas, Stettner was the first person to come to look at the diamond, and he represented that he was the buyer, and that he had sufficient funds on hand to complete the purchase. Present in the room were Diane Breitman, Reid Breitman (Breitman's son), five diamond dealers (two working with Diane, and three who stated that they represented Stettner), Stettner's girlfriend, and two security men from Wynn. Stettner stated he loved the necklace, and wanted to buy it. He asked that the auction be stopped immediately. He was told that until he made an absolute binding commitment, Breitman could not stop the auction, but she would give him until noon the next day to sign and put up a $2 million non-refundable deposit. Next

day, he did not sign or make his commitment, so Breitman and her representatives showed the Diamond to a few more buyers.

13. Stettner then came back on Saturday, June 4, and stated that he would buy the necklace for $23.5 million.  He could not put up the $2 million, because it was Saturday, but he put up a 20 carat diamond valued at $420,000, and signed an agreement memorializing the deal (Exhibit B).  By that time, Reid Breitman had left due to an important engagement involving his son which could not be rescheduled, and, as a result, there was no lawyer available to document the full agreement of the parties.  Accordingly, the document that was signed by Stettner stated the commitment to purchase the Wynn Diamond, the purchase price of $23,500,000, and the fact that the 20 carat diamond was deposited with Breitman to secure performance.  A closing date was not stated.

14. Stettner stated to Diane Breitman, as well as two of the diamond brokers, that he would put up the $2 million non-refundable deposit within a week, and Stettner and Breitman agreed that he would get the 20 carat diamond back when and if he did so.  Stettner also promised that he would close the purchase transaction by paying the $21,500,000 remaining balance of the purchase price (after the $2 million deposit) within 30 days of June 4, 2011.

15. Very importantly, Stettner then said "MAZAL!" to all five diamond brokers, and Breitman.  The term "MAZAL" has special meaning in the diamond industry; it means "this deal is done" and the money is on its way.  The negotiating is over.

16. In reliance on Stettner's representations that he was the buyer, that he had the funds available to complete the purchase, that he would deposit the $2 million non-refundable

deposit within a week, and that he would close the purchase transaction within 30 days, Breitman stopped the auction, and turned away several very interested buyers.

17. Breitman then had to leave Las Vegas that afternoon, and an agreement, dated June 4, 2011, was drafted by Gall Raiman and Stettner using an assistant at the concierge desk at the Wynn Encore hotel.  This agreement was then signed by Stettner, Gall Raiman on behalf of Diane Breitman, Scott Peterson (Wynn's security) as witness, and all three brokers that represented Stettner (Noureddin Zamani, David Galbari and Robert Haiimpoor) (referred to herein as the "June 4 Purchase Agreement").

18. Wynn kept the 20 carat diamond in a vault in his casino, along with the Wynn Diamond.

19. Stettner did not put up the $2 million within a week.

20. He did not close in 30 days.

21. Stettner has never closed the deal; nor has he ever tendered the purchase price.

22. Stettner did try to negotiate a new deal over the next several months.

23. Stettner came to Los Angeles to meet with Breitman, Reid Breitman and all five of the brokers (2 assisting Breitman and 3 representing Stettner) to renegotiate parts of the deal that were concerning Stettner and which caused Stettner to fail to close.

24. At that time, the parties negotiated a settlement, and Stettner verbally agreed that he would move forward and purchase the diamond for $23,500,000, release all the brokers from all claims, receive a release of all claims from the brokers, and close the deal by September 9, 2011, if Breitman would agree to pay $300,000 of her fees to the three brokers that represented Stettner, and Stettner would not be obligated to pay anything to the brokers who had represented him.  Breitman, Stettner and the three brokers that represented Stettner agreed, and the deal was made.

Complaint

25. In early August, 2011, Stettner contacted Breitman to show the Diamond to an investor who, according to Stettner had agreed to put up the money for Stettner to close by September 9, 2011.

26. To avoid any confusion or misunderstandings, Breitman required that Stettner sign an agreement covering the purchase terms of the verbal agreement made in Los Angeles earlier before he and his investor could view the Diamond. Specifically, Breitman required a purchase agreement that would be approved by Wynn, and signed by Wynn, Stettner and Breitman, that specifically covered the purchase of the Wynn Diamond, the closing date, and the deposit requirement.

27. A new agreement was proposed, drafted and approved by Wynn, Breitman, Stettner's lawyer and by Stettner. The final agreement, after much negotiation and changes requested by Stettner, Wynn's lawyer and Stettner's lawyer, was drafted and sent to Stettner and his lawyer. Breitman required that that specific agreement be signed and faxed or emailed back to her prior to Stettner being allowed to show the Wynn Diamond to his investor. Stettner agreed to the terms of that agreement, but stated that as he was in a hotel room, he could not fax or email the signed agreement back to Breitman. Accordingly, Breitman permitted him to manifest his agreement to the terms of this final agreement by sending an email in which he said simply "I AGREE!!!" in response to Reid Breitman's request for "confirmation that you will sign the purchase agreement I just sent." Stettner's lawyer also confirmed in an email that Stettner had signed this final agreement.

28. In reliance on Stettner's promise in the email to sign the revised purchase agreement that all parties, including Wynn, had agreed to, Breitman set up the viewing for Stettner and his investor which took place at the Wynn Encore hotel in Las Vegas that same day.

29. After the viewing, Stettner sent the revised agreement, signed by Stettner, over to Breitman on or about August 23, 2011, but when it arrived Stettner had completely changed the agreement by crossing out key provisions, writing in new provisions such as a different closing date, a different date for tendering the $2 million deposit, shifting the cost of returning the 20 carat diamond to Stettner upon receipt of the $2 million deposit, removing certain release language, and adding certain cure provisions.

30. The revised agreement was unacceptable to Breitman and Wynn and was never signed by them, although it was signed by Stettner.

31. Again Stettner did not close the deal by September 9th or ever.

32. After it became apparent that Stettner was not going to sign an acceptable revised agreement, and was not able to close the transaction, Breitman terminated negotiations and declared Stettner to have defaulted, and informed Stettner that the 20 carat diamond would be retained as liquidated damages as agreed in the June 4 Purchase Agreement.

33. Stettner refused to accept the termination, and continued to claim that he not only had the right to purchase the Wynn Diamond, but that he actually was the owner of the Wynn Diamond, and that his only obligation was to pay for it within 120 days. He also, personally and through his lawyer, contacted Wynn Resorts on several occasions, and Breitman vehemently demanded verbally and in writing that both Stettner and his lawyer should immediately cease and desist from any communications with Breitman's client,

the Seller, and that Stettner must not state to any third party that he owns the Wynn

Diamond, or that he has any right to purchase it.

34. In October, 2011 Breitman was still looking for buyers and marketing the Diamond.

35. A diamond dealer from New York contacted Breitman through Gall Raiman one of the

brokers working with her, and asked to see the Diamond; he was Lab Blatman.  Blatman

brought another dealer, Zaki Salame, also from New York who claimed to have a buyer

for the Diamond.  The buyer, according to Zaki and Lab wished to remain anonymous

(which is common in such large diamond transactions) and so they did not disclose the

buyer's identity (Zaki's Buyer).

36. At the same time, Breitman located an additional buyer, who was represented by E

Diamond, Inc. in New York.  The buyer wanted to remain confidential, so Breitman

discussed the transaction with E Diamond's lawyer, Cindy Malloy.  They offered $25

million, subject only to confirmation that the 230 carat diamond was the same as

described in the 2008 GIA certificate, and that the buyer would send an expert to Las

Vegas to go see it and make the confirmation.

37. In October Cindy Malloy contacted Reid Breitman who said that she just received an

email with a picture of the necklace, with that day's newspaper, from Stettner, stating that

he owns the necklace, and that Wynn does not, and that anyone saying that they can sell

the necklace is lying to her.  Stettner offered the fact that he was presently in possession

of the Wynn Diamond as proof that he was the true, current owner of the Wynn

Diamond.  Molloy expressed her deep concern that something funny was going on, and

that her client was very concerned that someone was trying to defraud him.

Complaint

38. It turns out that Zaki's Buyer was actually E Diamond's client. Zaki had met Stettner in NY, and Stettner had told Zaki that Stettner owned the necklace. Stettner provided photoshopped pictures of the necklace with a current newspaper as proof that he owned the necklace and had possession of the necklace.

39. The photo came from Zaki who gave it to Stettner; Stettner had the picture altered to make it look like he owned the Diamond.

40. When Molloy told Reid Breitman about the fraudulent email from Stettner, Diane Breitman happened to still be at the Wynn Encore, and had just left the Wynn Diamond mere minutes previously. Breitman immediately confirmed that the necklace was still at the Wynn Encore with Wynn's security personnel, and went back to get the Wynn Diamond, and take pictures and a video of herself, wearing the necklace, with that day's newspaper, and a white paper with Cindy written on it as proof that she still had access to the Wynn Diamond, and that the Wynn Diamond remained in possession of its true, current owner, Wynn Resorts. She sent the video and pictures by email to Cindy Molloy.

41. All of Breitman's efforts were for naught; the buyer got spooked and the deal died.

42. As a result of Stettner's actions and the second deal falling through, Wynn was very disturbed and angry with Breitman for bringing such an unstable buyer as Stettner, and for causing so much trouble. Wynn blamed Breitman for the hassles that were being caused by Stettner. To complicate matters, Stettner continued to contact Wynn Resort personnel, including Wynn's lawyer, Kim Sinatra, and others, which was disturbing to Wynn.

43. Breitman continued to demand, verbally and in writing, that Stettner and his lawyer refrain from contacting anyone at Wynn Resorts other than through Breitman.

44. As a result of Stettner's conduct, and his continuing harassment of Wynn Resort personnel, his sending people to pose as buyers to Breitman, and his interference with real buyers by claiming to own the Wynn Diamond, Steve Wynn decided to cancel the agreement with Breitman as exclusive agent to sell the Wynn Diamond.

45. This was personally devastating to Breitman, as she felt that she had failed professionally, and greatly disappointed Steve Wynn, who had been her friend for 40 years.  This also caused Breitman to suffer damage to her professional reputation, as it is known throughout the diamond industry that Wynn had retained Breitman to sell the famous Wynn Diamond, and that she failed and was fired by Wynn due to complications.

46. At some point, Breitman is informed and believes that Wynn gave the 20 carat diamond back to Stettner (the earlier deposit) in exchange for a release from Stettner.  Wynn washed his hands of the whole sordid affair in disgust.

47. Breitman, however, lost her commission from the first aborted sale with Stettner which would have $1,410,000.

48. Breitman lost the 20 carat diamond which was a non refundable deposit to secure Stettner's performance; this diamond was worth $420,000.

49. Breitman lost the second commission with the E Diamond buyer even though it was a firm cash offer with no contingencies.

50. Breitman lost her good name and reputation amongst the jewelry dealers and gem buyers as a result of Stettner's actions.

51. Breitman lost her long standing and profitable relationship with Wynn all because of Stettner's actions.

52. On or about October 2, 2011, Stettner falsified the Zaki photo and provided to E Diamond with the expressed intention of interfering with Breitman's agreement with Wynn to be his exclusive agent to sell the Wynn Diamond.

53. On or about October 2, 2011, Stettner falsely stated to Malloy that he (Stettner) owned the Diamond and that anyone else claiming to have the rights to sell it (namely Breitman) was lying.

54. On or about June 4, 2011, Stettner represented to Breitman that he would buy the Diamond and that he had the ability to perform all the while knowing that he had no intention or ability to consummate the sale.

55. Breitman relied on Stettner's false representations and stopped the private auction turning away other serious, interested buyers.

56. Stettner intentionally blocked the sale to the E Diamond buyer and called Breitman a liar.

57. To say the very least, Breitman has been distraught over the loss of her commissions and her good name, reputation and her long standing, profitable relationship, both business and personal, with one of the richest men in the world – Steve Wynn.

58. Breitman has been unable to sleep; she has experienced physical systems of distress and anxiety.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

Plaintiff repeats, realleges and incorporated herein by reference the facts as stated above and as alleged herein in paragraphs 1 through 58 and further states:

59. Breitman entered into a written contract with Stettner on June 4, 2011 (¶¶ 13-14).

60. That contract was modified by an oral modification (¶¶ 24-25).

61. At all times Breitman was ready, willing and able to perform all of the requirements of the contract.

62. Stettner breached the contract by failing to perform as agreed (¶¶ 12-32) without cause or legal excuse.

63. As a direct and proximate result of Stettner's breach of contract, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $420,000.

### SECOND CAUSE OF ACTION
(Intentional Interference with Contractual Relations)

Plaintiff repeats, realleges and incorporated herein by reference the facts as stated above and as alleged herein in paragraphs 1 through 63 and further states:

64. Breitman had a valid, enforceable Exclusive Agency Agreement with Wynn which entitled her to commissions upon the sale of the Diamond (¶¶ 9-10).

65. Stettner was informed by Breitman, as well as the five representatives present in the negotiations of the sale, that Breitman was the exclusive agent for Wynn and that she was entitled to a commission.

66. After Stettner breached his contract with Breitman (¶¶ 58-63) Stettner set out on a course of conduct that could lead to no other outcome but to thwart Breitman's exclusive agency agreement (¶¶ 37-50).

67. Stettner made material misrepresentations to Malloy and others that he was the true owner of the Diamond and that Breitman was a liar.

68. The E Diamond buyer had made a firm, non contingent offer to buy the Diamond which was accepted by Breitman pending certification of the Diamond itself.

Complaint

69. By knowingly misrepresenting to E Diamond that he (Stettner) was the true owner and that Breitman was a liar, he caused a cloud of suspicion over the entire transaction which caused the buyer to cancel the contract.

70. As a result of his actions (¶¶ 59-69) Breitman lost her second commission to which she would have been entitled had the E Diamond buyer not have been driven away by Stettner.

71. At least two other buyers approached Breitman and requested the opportunity to buy the Wynn Diamond, at purchase prices that were at least $25 million each, after Wynn had cancelled the Exclusive Agency Agreement.  Wynn would not allow Breitman to show the Wynn Diamond to these buyers.  Breitman believes these buyers to be well qualified, and ready, willing and able to purchase the Wynn Diamond for $25 million; however, she is unable to sell the Wynn Diamond to them due to Stettner's intereference which caused Wynn to cancel the Exclusive Agency Agreement.  Breitman's commission on such sales would have been at least $1,500,000.

72. As a direct and proximate result of Stettner's Intentional Interference with Contractual Relations, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,410,000.

### THIRD CAUSE OF ACTION
(Intentional Interference with Prospective Economic Relations)

Plaintiff repeats, realleges and incorporated herein by reference the facts as stated above and as alleged herein in paragraphs 1 through 72 and further states:

73. Breitman had a long standing and mutually profitable relationship with Wynn for over 40 years.  In addition, Breitman considered Wynn a personal friend, and was ultimately

extremely loyal and responsive to Wynn.  Breitman has sold millions of dollars worth of jewelry to Wynn over several decades, including the Wynn Diamond itself in 2007.

74. Stettner was informed by Breitman, as well as the five representatives present in the negotiations of the sale, that Breitman had that long standing and mutually profitable relationship with Wynn for over 40 years, was the exclusive agent for Wynn, that she was entitled to a commission on the sale of the Wynn Diamond.

75. Stettner knew that Breitman was entitled to a commission on the sale of the Wynn Diamond to the E Diamond buyer, or to any other buyer who completed the transaction.

76. Stettner knew that Breitman reasonably anticipated future deals with Wynn and, based on the long standing course of conduct and dealing between Breitman and Wynn she reasonably expected to make money from that relationship.

77. For reasons only known to him, Stettner, by his actions intentionally set out to cause a rift between Breitman and Wynn which ultimately brought about the demise of that relationship (¶44).

78. As a direct and proximate result of Stettner's Intentional Interference with Prospective Economic Relations, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,410,000.

79. Stettner's actions were intentionally and knowingly made with the intention to cause Breitman to lose the deal, and to be unable to sell the Wynn Diamond to anyone.

80. The court should award and Breitman seeks punitive damages against Stettner in an amount to be determined at trial or such other proceedings before the court as appropriate.

Complaint

### FOURTH CAUSE OF ACTION
(Fraud)

Plaintiff repeats, realleges and incorporated herein by reference the facts as stated above and as alleged herein in paragraphs 1 through 79 and further states:

81. Stettner represented that he was ready, willing and able to perform under his contract with Breitman (¶¶12-29). Stettner also stated that he was the buyer, and that he was not acting as a broker, and his purchase was not contingent on his ability to raise capital or attract investors. This representation was a material factor in Breitman's decision to stop the private auction, and was made with the specific intent that Breitman rely on such representation in making her decision to stop the private auction at Stettner's request, and, in fact, insistence and demand.

82. Stettner knowingly made those false representations to Breitman, in the presence of the 5 representatives as well as representatives of Wynn.

83. Stettner was not ready, willing or able to perform at all; in fact Stettner had no money of his own in the deal but was looking for investors to finance the deal after the fact. Stettner manufactured numerous objections and demands after the fact in an effort to continually delay the closing date, so that he could complete his necessary capital raising in order to close, but failed to disclose this to Breitman.

84. Breitman reasonably relied on Stettner's false representations by stopping the sale and turning away other qualified buyers.

85. As a direct and proximate result of Stettner's Fraud, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,410,000

86. Stettner's actions were intentionally and knowingly made with the intention to defraud Breitman.

87. The court should award and Breitman seeks punitive damages against Stettner in an amount to be determined at trial or such other proceedings before the court as appropriate.

FIFTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

Plaintiff repeats, realleges and incorporated herein by reference the facts as stated above and as alleged herein in paragraphs 1 through 87 and further states:

88. Stettner set out to run a scam on Breitman and Wynn in an effort to gain some leverage or advantage in his business.

89. His conduct was outrageous (¶¶ 39-54).

90. Breitman suffered severe emotional distress as a result of Stettner's intentional acts (¶¶57-58).

91. As a direct and proximate result of Stettner's Intentional Infliction of Emotional Distress, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,000,000.

92. Stettner's actions were intentionally and knowingly made with the intention to defraud Breitman.

93. The court should award and Breitman seeks punitive damages against Stettner in an amount to be determined at trial or such other proceedings before the court as appropriate.

WHEREFORE, Plaintiff claims as damages:

1) On the First Cause of Action for Breach of Contract:

Complaint

As a direct and proximate result of Stettner's breach of contract, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $420,000.

2) On the Second Cause of Action for Intentional Interference with Contractual Relations:

As a direct and proximate result of Stettner's Intentional Interference with Contractual Relations, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,410,000.

3) Intentional Interference with Prospective Economic Relations:

As a direct and proximate result of Stettner's Intentional Interference with Prospective Economic Relations, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,410,000.

The court should award and Breitman seeks punitive damages against Stettner in an amount to be determined at trial or such other proceedings before the court as appropriate.

4) Fraud:

As a direct and proximate result of Stettner's Fraud, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,410,000

The court should award and Breitman seeks punitive damages against Stettner in an amount to be determined at trial or such other proceedings before the court as appropriate.

5) Intentional Infliction of Emotional Distress:

As a direct and proximate result of Stettner's Intentional Infliction of Emotional Distress, Breitman has suffered actual damages in amount to be determined at the trial of this case but in no event less than $1,000,000.

Complaint

1     The court should award and Breitman seeks punitive damages against Stettner in an amount

2     to be determined at trial or such other proceedings before the court as appropriate.

3

4

5    Dated: February 1, 2012

                                  Timothy F. Umbreit, Esq. (SBN: 145932)

6                                     Reid Breitman, Esq. (SBN: 179355)

                                    Corporate Legal Services, LLP

7                                     Attorneys for Plaintiff Diane Breitman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff demands that all issues be tried by a jury.

Dated: February 1, 2012

Timothy R. Umbreit, Esq. (SBN: 145932)
Reid Breitman, Esq. (SBN: 179355)
Corporate Legal Services, LLP
Attorneys for Plaintiff Diane Breitman

Complaint



THE WYNN DIAMOND

# Collateral Agreement June 4th 2011

**From:**
Brett Stettner dba Winston Stettner
580 Fifth Ave, Suite 2504.
NY, NY

**To:**
Diane Breitman dba Queen of Diamonds
5363 Scott Robertson Road NY,NY.
Hidden Hills, CA

Ref: 230.17 CT   largest White Pear Shape Diamond Cartier Necklace GIA#
14434424

20.04 OP color VS2 carats is given to the Queen of Diamonds and grants a security
interest in such a diamond to secure performance of the purchase of the Wynn
diamond 230.17 carats H VS1 mounted in a Cartier necklace.

Diamond is sold to Brett Stettner for $23,500,000 on Saturday June 4th 2011.

If Brett Stettner fails to close the deal than Diane Breitman c/o Mr. Steve Wynn
will keep this diamond as liquidated damages.

Diane Breitman is the exclusive seller of the Wynn diamond and authorized by the
sole owner Mr. Steve Wynn to convey clean and sole title for the diamond
necklace.

**Brett Stettner**
X _____

*Gall Raiman for.*

**Diane Breitman**
X _____

X Noureddin-Zamani
Witnesses N. Zamani

X Robert Daiimpour
w. tns

Witnesses
STEVEN M. PATTERSON

X David Galbany

Bcb

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Timothy F. Umbreit (SBN 145932)<br>4701 Cartwright Ave.<br>Toluca Lake, CA 91602<br><br>TELEPHONE NO.: 818-535-7381        FAX NO.: 818-334-5659<br>ATTORNEY FOR *(Name):* Diane Breitman dba Queen of Diamonds | **FILED**<br>Los Angeles Superior Court<br><br>FEB 01 2012<br><br>JOHN A. CLARKE, CLERK<br><br>BY DAWN ALEXANDER, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles County
STREET ADDRESS: 111 N. Hill St
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME:
Diane Breitman dba Queen of Diamonds v Brett Stettner, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: B C 4 7 8 1 4 6 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[ ] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action *(specify):*  Breach of Contract; Intentional Interference
5. This case [ ] is   [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 02/01/2012
Timothy F. Umbreit
_____(TYPE OR PRINT NAME)_____                    ►_____(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_____

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Diane Breitman dba Queen of Diamonds v Brett Stettner, et | BC478146 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 5 ___ ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked.
For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| **Applicable Reasons for Choosing Courthouse Location (see Column C below)** |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g.,<br>assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | V<br>1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

| SHORT TITLE: Diane Breitman dba Queen of Diamonds v Brett Stettner, et | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2: |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer- Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0

| SHORT TITLE:                                              | CASE NUMBER |
|----------------------------------------------------------|-------------|
| Diane Breitman dba Queen of Diamonds v Brett Stettner, et |             |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151   Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141   Sister State Judgment | 2., 9. |
| | | ☐ A6160   Abstract of Judgment | 2., 6. |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030   Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121   Civil Harassment | 2., 3., 9. |
| | | ☐ A6123   Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190   Election Contest | 2. |
| | | ☐ A6110   Petition for Change of Name | 2., 7. |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100   Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

| SHORT TITLE:<br>Diane Breitman dba Queen of Diamonds v Brett Stettner, et | CASE NUMBER |
| --- | --- |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1**, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C<br>WHICH APPLIES IN THIS CASE<br><br>☑1. ☑2. ☐3. ☐4. ☑5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>17606 Camino de Yatasto |
| --- | --- |
| CITY:<br>Pacific Palisades | STATE:<br>CA | ZIP CODE:<br>90272 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk</u> courthouse in the <u>Central</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>02/01/2012</u>

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

### PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# EXHIBIT B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Brett Stettner, Individually, Brett Stettner D/B/A Winston-Stettner, and
Does 1 to 5

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DIANE BREITMAN D/B/A QUEEN OF DIAMONDS

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Los Angeles Superior Court

FEB 01 2012

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya una formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court Los Angeles County

CASE NUMBER:
*(Número del Caso):* BC478146

111 N. Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Timothy F. Umbreit 4701 Cartwright Ave. Toluca Lake, CA 91602  818-535-7381

DATE:
*(Fecha)* FEB 01 2012

JOHN A. CLARKE  Clerk, by _____ , *(Secretario)* DAWN ALEXANDER Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# EXHIBIT C

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Tim Umbreit, 145932<br>Corporate Legal Services, LLP<br>17606 Camino de Yatasto<br>Pacific Palisades, CA  90272<br>    TELEPHONE NO.: (310) 454-5745<br>ATTORNEY FOR *(Name):* Plaintiff | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>FEB 1 4 2012<br><br>JOHN A. CLARKE, CLERK<br><br>BY RAUL SANCHEZ DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, Los Angeles County
111 N. Hill Street
Los Angeles, CA  90012-3117

| PLAINTIFF/PETITIONER: Diane Breitman | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Brett Stettner | BC478146   D-37 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Queen of Diamonds |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.    **BY FAX**

2. I served copies of: Summons; Civil Case Cover Sheet; Civil Case Cover Sheet Assignment; Complaint; Notice of Case Assignment;
ADR Information Package; Voluntary Efficient Litigation Stipulations

3. a. Party served: Brett Stettner, individually

   b. Person Served: party in item 3a

4. Address where the party was served:   580 5th Ave, 25th Floor 2504
   New York, NY  10036

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) or *(date):* 2/10/2012     (2) at *(time):* 11:38 AM

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.

7. Person who served papers
   a. Name:         Otis Osborne
   b. Address:    One Legal - 194-Marin
             504 Redwood Blvd, Suite 223
             Novato, CA  94947
   c. Telephone number: 415-491-0606
   d. The fee for service was:  $ 156.00
   e. I am:
      (1) Not a registered California process server.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 2/10/2012

Otis Osborne
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev Jan 1, 2007]       **PROOF OF SERVICE OF SUMMONS**       Code of Civil Procedure, § 417.10

OL# 1764256

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Tim Umbreit, 145932<br>Corporate Legal Services, LLP<br>17606 Camino de Yatasto<br>Pacific Palisades, CA 90272<br>TELEPHONE NO.: (310) 454-5745<br>ATTORNEY FOR *(Name)* Plaintiff | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>FEB 14 2012<br><br>JOHN A. CLARKE, CLERK<br><br>BY RAÚL SANCHEZ, DEPUTY |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| Superior Court of California, Los Angeles County<br>111 N. Hill Street<br>Los Angeles, CA 90012-3117 |

| PLAINTIFF/PETITIONER: Diane Breitman | CASE NUMBER:<br>BC478146   D-37 |
|---|---|
| DEFENDANT/RESPONDENT: Brett Stettner | |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>Queen of Diamonds |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

**BY FAX**

2. I served copies of: Summons; Civil Case Cover Sheet; Civil Case Cover Sheet Assignment; Complaint; Notice of Case Assignment; ADR Information Package; Voluntary Efficient Litigation Stipulations

3. a. Party served: Brett Stettner, individually

   b. Person Served: party in item 3a

4. Address where the party was served: 580 5th Ave, 25th Floor 2504
   New York, NY 10036

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 2/10/2012   (2) at *(time):* 11:38 AM

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.

7. Person who served papers
   a. Name: Otis Osborne
   b. Address: One Legal - 194-Marin
      504 Redwood Blvd, Suite 223
      Novato, CA 94947
   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 156.00
   e. I am:
      (1) Not a registered California process server.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 2/10/2012

Otis Osborne
(NAME OF PERSON WHO SERVED PAPERS)                                    (SIGNATURE)

| Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007] | PROOF OF SERVICE OF SUMMONS | Code of Civil Procedure, § 417.10 |
|---|---|---|

OL# 1764256

NOTICE SENT TO:

Umbreit, Timothy F.
Corporate Legal Services, LLP
17606 Camino De Yatasto
Pacific Palisades    CA   90272

FILE STAMP  **FILED**
LOS ANGELES SUPERIOR COURT

MAR 0 2 2012

JOHN A. CLARKE, CLERK

BY SHERRIE WORKU, DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DIANE BRETTMAN

                              Plaintiff(s),

        VS.

BRETT STETTNER

                              Defendant(s).

CASE NUMBER

BC478146

**ORDER TO SHOW CAUSE HEARING**

To the party/attorney of record: <u>**COUNSEL FOR PLAINTIFF**</u>

You are ordered to appear for an Order to Show Cause Hearing on <u>April 4, 2012</u> at <u>9:00 am</u> in <u>Dept. 37</u> of this court, Central District, 111 North Hill Street, Los Angeles, California 90012, and show cause why sanctions should not be imposed for:

<u>**ORDER TO SHOW CAUSE RE ENTRY OF DEFAULT and ORDER TO SHOW CAUSE**</u>
<u>**RE DEFAULT JUDGMENT**</u>

Failure to comply or appear may result in sanctions, pursuant to one or more of the following: California Rules of Court, rule 2.30, and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[ ] To avoid a mandatory appearance all required documents must be filed in [ ] this Dept [ ] Clerk's Office, Room <u>118</u> at least 5 court days prior to the date of the hearing.

[ ] The Court may infer from your failure to appear that possession of the premises is no longer at issue, and that your case is not entitled to preference in setting pursuant to Code of Civil Procedure section 1179a.

[ ] You are ordered to give notice of said hearing forthwith to any party served with summons and complaint prior to OSC Hearing and file a Proof of Service in this department or Clerk's Office at least 5 court days prior to the date of the hearing.

Dated: <u>March 2, 2012</u>

Judicial Officer

CERTIFICATE OF MAILING

JOANNE B O'DONNELL

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Hearing upon each party or counsel named above by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown above with the postage thereon fully prepaid.

Date: <u>March 2, 2012</u>

John A. Clarke, EXECUTIVE OFFICER/CLERK

By _____, Deputy Clerk

ORDER TO SHOW CAUSE HEARING

LACIV 166-11 (Rev. 09/08)
LASC Approved 06-04

LASC Local Rules, Chapter 7
Cal. Rules of Court, rule 2.30

NOTICE SENT TO:

Umbreit, Timothy F.
Corporate Legal Services, LLP
17606 Camino De Yatasto
Pacific Palisades    CA   90272

**FILED**

FILE STAMP LOS ANGELES SUPERIOR COURT

MAR 0 2 2012

JOHN A. CLARKE, CLERK

BY SHERRIE WORKU, DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | CASE NUMBER |
|---|---|---|
| DIANE BRETTMAN | Plaintiff(s), | BC478146 |
| VS. | | |
| BRETT STETTNER | Defendant(s). | **NOTICE OF CASE MANAGEMENT CONFERENCE** |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for  April 4, 2012  at  9:00 am  in Dept. 37 at 111 North Hill Street, Los Angeles, California  90012.

**NOTICE TO DEFENDANT:**    **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: March 2, 2012

Judicial Officer
DIANNE B. O'DONNELL

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[X] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[ ] by personally giving the party notice upon filing the complaint.

Date: March 2, 2012

John A. Clarke, Executive Officer/Clerk

by _____ , Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

## PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action. My business address is 21650 Oxnard Street, Suite 500 Woodland Hills, CA  91367.

On March 9, 2012, I served the following documents described as **BRETT STETTNER, INDIVIDUALLY, AND BRETT STETTNER D/B/A WINSTON-STETTNER'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT** on the persons listed below:

## SEE ATTACHED LIST

[X] **By United States mail:** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Woodland Hills, CA.

[ ] **By overnight delivery:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[ ] **By messenger service:** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service.

[ ] **By fax transmission:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

[ ] **By e-mail or electronic transmission:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 9, 2012, at Woodland Hills, CA.

Rhonda S. Soll

Rhonda S. Soll

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**

*Diane Breitman d/b/a Queen of Diamonds vs. Brett Stettner, et al.*

*USDC Case No. _____*

LASC Case No. BC478146

| | |
|---|---|
| Timothy F. Umbreit<br>Reid Breitman<br>Corporate Legal Services, LLP<br>17606 Camino de Yatasto<br>Pacific Palisades, CA  90272<br>Tel:  310-701-5517<br>Fax:  310-977-2110 | Attorneys for Plaintiff,<br>*Diane Breitman D/B/A/ Queen of*<br>*Diamonds* |

556886
3448.001

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV12- 2034 PSG (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]** **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ]** **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ]** **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

DIANE BREITMAN D/B/A QUEEN OF DIAMONDS

**DEFENDANTS**

BRETT STETTNER, INDIVIDUALLY, BRETT STETTNER B/D/A WINSTON-STETTNER, AND DOES 1 TO 5

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Timothy F. Umbreit (SBN 145932) Reid Breitman (SBN 79355) Corporate Legal Services, LLP 17606 Camino de Yatasto Pacific Palisades, CA 90272 310-701-5517

Attorneys (If Known)

Mark D. Brutzkus (SBN 128102) Nicholas A. Rozansky (219855) Ezra Brutzkus Gubner LLP, 21650 Oxnard St., 5th Fl. Woodland Hills, CA 91367 818-827-9000

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** $1,410,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Section 1441(b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **CV12 02034**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                             ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _(signature)_           Date **March 9, 2012**

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action.  My business address is 21650 Oxnard Street, Suite 500 Woodland Hills, CA  91367.

On March 9, 2012, I served the following documents described as **CIVIL COVER SHEET** on the persons listed below:

## SEE ATTACHED LIST

[x] **By United States mail:**  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Woodland Hills, CA.

[ ] **By overnight delivery:**  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[ ] **By messenger service:**  I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service.

[ ] **By fax transmission:**  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out, is attached.

[ ] **By e-mail or electronic transmission:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 9, 2012, at Woodland Hills, CA.

*Rhondas.Soll*
Rhonda S. Soll

1

## SERVICE LIST

2          *Diane Breitman d/b/a Queen of Diamonds vs. Brett Stettner, et al.*
                              *USDC Case No.* _____
3                       LASC Case No. BC478146

4

| Timothy F. Umbreit | Attorneys for Plaintiff, |
|---|---|
| Reid Breitman | *Diane Breitman D/B/A/ Queen of* |
| Corporate Legal Services, LLP | *Diamonds* |
| 17606 Camino de Yatasto | |
| Pacific Palisades, CA  90272 | |
| Tel:  310-701-5517 | |
| Fax:  310-977-2110 | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

556886
3448.001