UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6 (lc)

Link #48

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| | Wendy Hernandez | Not Reported |
| | Deputy Clerk | Court Reporter / Recorder |
| | Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| | Not Present | Not Present |

**Proceedings:**     (In Chambers) Order GRANTING Motion for Summary Judgment

     Before the Court is Defendant's Motion for Summary Judgment as to all claims. *See* Dkt. # 48. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. Having read and considered the moving and opposing papers, the motion is GRANTED.

I.     Background

    A.     Facts

     This lawsuit involves the unsuccessful sale of the 230 carat "Wynn Diamond." *See generally* Dkt. #1. In March 2011, business magnate Steve Wynn ("Wynn") approached Plaintiff Diane Brietman ("Plaintiff") regarding the sale of the Wynn Diamond ("Wynn Diamond"), owed by Wynn. Although the parties dispute the terms of a purported agreement between Wynn and Plaintiff, it is undisputed that Wynn agreed to provide Plaintiff with a 6% commission if she found a buyer for the Wynn Diamond. *Breitman Depo. Tr., vol. 2*, Ex. C. Plaintiff arranged for a private auction at the JCK Las Vegas Jewelry Show, which she believed was the best opportunity to attract qualified buyers to view the Wynn Diamond and submit private offers. UF 31; *Diane Breitman Depo. Tr.*, vol. 1 at 25:25-26:7.

     Defendant Brett Stettner ("Defendant") viewed the diamond on or around June 2, 2011. *Stettner Depo Tr.* at 28:19-30:18. In oral negotiations, Defendant agreed to give Plaintiff a 20-carat diamond as collateral ("Collateral Diamond") as an inducement to stop the private auction Plaintiff was holding and notify prospective buyers that the Wynn Diamond had been sold to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

Defendant. *Stettner Depo. Tr.* at 47:6-48:12. According to Plaintiff, the parties agreed that in the event Defendant failed to deposit the funds for purchase of the Wynn Diamond, Plaintiff c/o Steve Wynn could retain the Collateral Diamond as liquidated damages. *Diane Breitman Depo Tr., vol. 1* at 40:22-24. The parties also stipulated to a purchase price of $23.5 million, whereby Defendant would provide a $2 million cash deposit within seven days and would pay the remaining $21.5 million within thirty days. *Diane Breitman Depo Tr., vol. 1* at 33:6-11; *Brett Stettner Depo Tr.* at 44:19-21.

The parties entered into a written agreement that memorialized the terms of the negotiations ("Collateral Agreement"). *Diane Breitman Depo Tr., vol. 1*, Ex. A; *Reid Breitman Depo Tr.* at 36:16-19. Defendant signed the Collateral Agreement. *Diane Breitman Depo Tr., vol. 1* at 49:6-8; Ex. A. Although Plaintiff did not sign the Collateral Agreement because she was unable to be present for the signing, Plaintiff authorized Gall Raiman to sign the Collateral Agreement on Plaintiff's behalf. *Diane Breitman Depo Tr., vol. 1* at 49:6-8.

Defendant deposited the Collateral Diamond but did not otherwise provide payment. UF 8. After Defendant failed to perform under the terms of the Collateral Agreement, Plaintiff and Defendant agreed upon an oral modification to the Collateral Agreement. *Compl.* ¶¶ 25-26. On August 11, 2011, Plaintiff and Defendant signed a Purchase and Sale Agreement (the "PSA") to memorialize the terms of the oral modification in writing. UF 11; *Diane Breitman Depo Tr., vol. 1* at 78:4-8; 79:13-14, Ex. B. Mr. Wynn did not sign the PSA because he wanted to make changes to it. *Breitman Depo Tr., vol. 1* at 82:1-9. After receiving Mr. Wynn's edits, Plaintiff sent Defendant a newly prepared purchase and sale agreement. Defendant signed the new agreement and returned it to Plaintiff with some modifications. UF 14; *Diane Breitman Depo. Tr.*, *vol. 1*, Ex. C. It was never signed by Plaintiff, Steve Wynn, or Wynn Resorts Macau. After Plaintiff terminated negotiations, the collateral diamond was returned to Defendant in exchange for a release signed by Defendant. UF 17, 18; *Sinatra Depo Tr.* at 47:22-48:2, 54:2-4; *Stettner Depo Tr.* 52:11-21; *Reid Breitman Depo Tr.*, Ex. I. Wynn Macau Resorts currently owns the Diamond. UF 2.

Plaintiff filed her Complaint on February 2, 2012, alleging causes of action for breach of contract, interference with contractual relations, interference with prospective business advantage, fraud, and intentional infliction of emotional distress. *See* Dkt. #1. Defendant filed a timely Notice of Removal on March 9, 2012. *Id.* Defendant now seeks summary judgment as to all of Plaintiff's causes of action. *See* Dkt. # 48.

II.     <u>Legal</u> <u>Standard</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

Federal Rule of Civil Procedure 56(a) establishes that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment not only as to an entire case, but also as to a claim, defense, or part of a claim or defense. *Id.* The movant bears the initial burden to demonstrate the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant satisfies the burden, the nonmovant must set forth specific evidence showing that there remains a genuine issue for trial, and "may not rest upon mere allegation or denials of his pleading." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

An issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson*, 477 U.S. at 249-50. A party asserting that a fact cannot be genuinely disputed must support that assertion by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party may object that material cited would not be admissible in evidence. *See id.* 56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show that the declarant or affiant is competent to testify on the matters stated. *See id.* 56(c)(4).

III.  Discussion

    A.  Requests for Admission

As a preliminary matter, many of Plaintiff's arguments relate to Plaintiff's Second Set of Requests for Admission, to which Defendant did not respond. Plaintiff argues that because Defendant did not respond to the Requests for Admission, they should be deemed admitted. Defendant filed an *ex parte* application requesting withdrawal of the admissions. *See* Dkt. # 92. Defendant contends that he first learned of the Second Set of Requests for Admission upon reviewing and replying to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. *Ex Parte App.* 4:5-8; *Stettner Decl.*, ¶ 3; *Goharchin Decl.*, ¶ 3. Defendant indicates that his former attorneys of record made a motion to withdraw shortly prior to when the Second Set of Requests for Admissions was served and withdrew before it became due. *Ex Parte App.* 4:9-14; *Stettner Decl.*, ¶ 4. Defendant also notes that Plaintiff's counsel never communicated

UNITED STATES DISTRICT COURT  JS - 6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

with Defendant or with Defendant's new counsel regarding the alleged missing responses to the Second Set of Requests for Admissions, and served a Third Set of Requests for Admissions, to which Defendant responded. *Ex Parte App.* 4:19-21; *Stettner Decl.*, ¶ 8; *Goharchin Decl.*, ¶ 4.

Requests for Admission are governed by Federal Rule of Civil Procedure 36. When a party fails to timely respond to requests for admission, the matters requested are automatically deemed admitted. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Withdrawal or amendment of the admissions may be permitted if withdrawal: (1) will promote the presentation of the action on the merits; and (2) will not result in prejudice to the party who obtained the admission in maintaining the action or defense on the merits. Fed. R. Civ. P. 36(b). "[A] district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions." *Conlon v. United States,* 474 F.3d 616, 622 (9th Cir. 2007). The party who obtained the admission bears the burden of demonstrating to the court that withdrawal of the admissions will prejudice him in maintaining the action on the merits. *Id.*

The first requirement of Rule 36(b) is satisfied if refusing to withdraw the admissions will have the practical effect of preventing the moving party from any presentation of the merits of the case. *Hadley v. United States,* 45 F.3d 1345, 1348 (9th Cir. 1995). As to the second requirement, "[t]he prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a person may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Id.* "Reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice." *Conlon,* 474 F.3d at 624. However, even if the moving party satisfies the two-pronged test, the Court retains discretion to deny the motion. *Id.* at 624-625. "[I]n deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." *Id.* at 625.

First, with regard to presentation of the action on the merits, Defendant argues that withdrawing the admissions will permit the presentation of the action on the merits. The admissions at issue relate to Plaintiff's causes of action for fraud, interference with contractual relations, and interference with prospective business advantage. *Stettner Decl.*, Ex B (admitting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

that, "[a]s a direct and proximate result of [his] Intentional Interference with Prospective Economic Relations between Breitman and Wynn Resorts, Breitman has suffered actual damages in the amount of $1,410,000.00," [Request No. 21] that Defendant "intentionally made false statements to Breitman in June 2011 to induce her to refuse offers from third parties to purchase the Wynn Diamond," [Request No. 29] and that Defendant "knew that Breitman would rely on [his] material misrepresentations concerning [his] ability to fund the $23,500,00 purchase of the Wynn Diamond.") [Request No. 27]. The requests essentially state the legal elements of the causes of action; thus, if the requests are deemed admitted, Defendant is foreclosed from presenting its arguments. *Jimena v. UBS AG Bank, Inc.*, 1:07-CV-00367-OWW, 2011 WL 587309, *5 (E.D. Cal. Feb. 9, 2011) (finding that failure to withdraw requests underlying plaintiff's claims for fraud, conversion, and other intentional torts would "effectively deprive [defendant] of the opportunity to introduce evidence to defend against most, if not all, the claims asserted against it"). Because the admissions speak to the elements of the claims, failure to permit withdrawal of the requests would foreclose Defendant's ability to litigate the merits of the causes of action for fraud, interference with contractual relations, and interference with prospective business advantage. Thus, this factor weighs in favor of permitting withdrawal.

Second, Plaintiff bears the burden of demonstrating to the Court that withdrawal of the admissions will prejudice her in maintaining the action on the merits. *Conlon*, 474 F.3d at 622. Plaintiff has failed to show any prejudice that she would face from the withdrawal of the admissions. For example, she has failed to show that any witnesses are unavailable or that she has relied on Defendant's admissions. *See Hadley*, 45 F.3d at 1345 (granting motion to withdraw where defendant had relied on the "deemed admissions" during plaintiff's deposition, finding that the inconvenience of inadequate deposition preparation was not severe enough to warrant denial of the motion). Even if Plaintiff had made the argument that she was prejudiced by relying on Defendant's alleged admissions during her Opposition to the Motion for Summary Judgment, which Plaintiff did not do, the Court notes that reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice. *See Conlon*, 474 F.3d at 624. Plaintiff cites to *Conlon* to argue that the Ninth Circuit did not permit a plaintiff to withdraw its admissions under "similar circumstances." *Opp. to Ex Parte App.* at 7:18-19 (citing *Conlon*, 474 F.3d at 618). However, in *Conlon*, the moving party's behavior was particularly egregious because defense counsel had twice warned him that the admissions were deemed admitted. *Id.* at 620. Here, Plaintiff made no effort to warn Defendant of his failure to respond to the admissions. Particularly in light of the changing of defense counsel, the Court does not find it reasonable to punish Defendant so harshly under these circumstances. Thus, this factor also weighs in favor of permitting withdrawal.

5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

Plaintiff also makes arguments regarding the propriety of the service of the Second Set of Requests for Admissions, argues that Defendant has filed a motion after the motion cutoff in the Court's scheduling order, and alleges that Defendant waited too long to file his *ex parte* application. Although it appears that Plaintiff did properly serve the Second Set of Requests for Admissions, because Mr. Stettner is not an attorney and because Plaintiff never notified Defendant of the error, the Court recognizes that the misunderstanding is likely an honest mistake. Additionally, while Defendant filed this motion after the motion cutoff, Defendant only became aware of the need for the motion upon Plaintiff's filing of the Opposition to the Motion for Summary Judgment. Finally, regarding Defendant waiting too long to file his *ex parte* application, the Court recognizes that it appears that Defendant was trying to informally resolve the matter with Plaintiff, to no avail. *See Ex Parte App.* 2:17-21; *Goharchin Decl.*, ¶ 5.

As such, the Court exercises its discretion to permit Defendant to withdraw the deemed admissions. Accordingly, the Court next turns to the merits of the Motion for Summary Judgment.

B. <u>Breach of Contract</u>

Based on the moving papers, the parties are in agreement that Nevada law applies to the claims at issue. To prevail on a claim for breach of contract in Nevada, a plaintiff must prove: (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *Saini v. Int'l Game Tech.,* 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (*citing Richardson v. Jones,* 1 Nev. 405, 405 (1865)).

Defendant attacks the element of the existence of a valid contract, arguing that Plaintiff does not have standing to bring a breach of contract claim. Article III standing is a jurisdictional prerequisite to a federal court's consideration of any claim. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). A plaintiff in federal court must show three things: (1) injury-in-fact; (2) causation, and (3) redressibility. *Allen v. Wright,* 468 U.S. 737, 750-51 (1984). Defendant suggests that Plaintiff lacks standing because she is not a real party in interest. However, the Court notes that whether a party is a "real party in interest" differs from whether a party has standing. *Kent v. Northern Calif. Regional Office of Am. Friends Service Comm.*, 497 F.2d 1325, 1329 (9th Cir. 1974) ("Rule 17(a) means only that the trustees have a real interest in the trust fund. Rule 17(a) does not give them standing; 'real party in interest' is very different from standing.").

However, the Court agrees with Defendant that where there is no contractual relationship between parties, a plaintiff does not have standing to bring a claim for breach of contract. *See Gunny v. Allstate Ins. Co.*, 108 Nev. 344, 345 (1992) ("We conclude that Greg lacks standing to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

sue because he had no contractual relationship with Allstate."); *Bell v. Am. Family Mut. Ins. Co.*, Nos. 50162, 54090, 2011 WL 855813, *1 (Mar. 10, 2011) (finding that it was a correct statement of Nevada law when the district court ruled "as a matter of law that Bell is a third-party claimant with no contractual relationship with American Family [and] that, because Bell has no contractual relationship with American Family, Bell has no direct action against American Family.").

Defendant argues that the evidence shows that there is no contract between Plaintiff and Defendant because Plaintiff did not have the authority to enter into any contract on behalf of Wynn and so no contract was created. Plaintiff alleges in her Complaint that Defendant breached the Collateral Agreement and a later oral modification to the Collateral Agreement (memorialized in the PSA). *See Compl.* ¶¶ 24-26, 59-60.[1] The Court will address each agreement in turn.

*1.    Collateral Agreement*

Defendant argues that he did not breach the Collateral Agreement because Plaintiff did not have the authority to enter into the Collateral Agreement. Under agency law, to form a contract between a principal and a third party, "an agent must have actual authority, express or implied, or apparent authority" to bind the principal. *Dixon v. Thatcher,* 103 Nev. 414, 417 (1987) (citation omitted). Apparent authority is "that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence." *Id.*

The evidence submitted by the parties shows that, even assuming Plaintiff had an exclusive agency agreement with Wynn, Plaintiff did not have the authority to enter into the Collateral Agreement on behalf of Steve Wynn. In his deposition, Wynn indicated that he told Plaintiff "that [he] wanted her to sell the diamond and [he] asked her to do it in a manner consistent with the way she had sold me diamonds." *Wynn Depo Tr.* at 9:19-22. Plaintiff explained in her deposition that in her prior dealings with Wynn, she had never entered into any written contracts. *Diane Breitman Depo Tr., Vol. 1* at 40:13-17. Wynn further explained in his

---

[1] The moving papers also reference a breach of the Oral Agreement that preceded the Collateral Agreement. However, the Court notes that the Complaint makes no mention of breach of the Oral Agreement. As such, the Court declines to analyze a potential breach of the Oral Agreement for purposes of summary judgment. *See Compl.* ¶¶ 59-60 (referring only to the Collateral Agreement and the PSA).

UNITED STATES DISTRICT COURT  
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

deposition that he never gave Plaintiff the authority to bind Wynn Resorts Macau using the Collateral Agreement. *See Wynn Depo Tr.* at 14:22-15:6 ("Q: Okay. Did you give Diane Breitman authority to bind Wynn Resorts Macau using a collateral agreement? A: No. I gave her the authority to offer it for sale in an appropriate way consistent with my understanding of her standards of doing business that were learned by me in my long-standing trade with her as a client. That's the only authority I gave her and I gave her the parameters I would accept."). He also stated that Plaintiff could not deliver possession of the Wynn Diamond without Wynn's signature or the signature or of an authorized representative of Wynn Macau. *See Wynn Depo Tr.* at 22:23-23:1. All of this evidence shows that Plaintiff did not have the authority to enter into the Collateral Agreement.

Plaintiff does not present any evidence to suggest that she had the authority to enter into contracts on behalf of Mr. Wynn. Plaintiff argues that she was the agent to Steve Wynn/Wynn Macau Resorts because Mr. Wynn agreed to pay Plaintiff a six percent commission upon the sale of the Wynn Diamond and agreed to certain terms relating to the delivery. *See Diane Breitman Depo Tr.*, *vol. 2*, Ex. C. However, while the email to which Plaintiff refers shows that Plaintiff was the exclusive agent of the Wynn Diamond, it does not suggest that the scope of Plaintiff's agency permitted her to enter into contracts on behalf of Mr. Wynn. *Id.* Plaintiff has failed to proffer any evidence to counter that presented by Defendant suggesting that she did not have the authority to enter into a contract on behalf of Mr. Wynn/Wynn Macau resorts and was therefore not a party to the Collateral Agreement.

Plaintiff counters that she has standing to enforce the contract because "a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." *Opp.* 8:10-12 (citing Restatement (Second) of Agency § 321 (1958)). Plaintiff argues that because she had disclosed that she was the agent for Mr. Wynn, as opposed to Wynn Macau resorts, she had only partially disclosed the principal and was therefore a party to the contract. While Plaintiff has failed to cite any Nevada case law interpreting the Restatement, the Court notes that even if it were to follow the Restatement approach, Plaintiff takes the text of the Restatement out of context. The Restatement should not be read to indicate that where one does not have the authority to enter into a contract on behalf of a principal, that party then has standing to enforce an invalid agreement. In fact, the Restatement directly addresses Plaintiff's flawed interpretation of the Restatement. Comment c to section 321 explains:

> If, although purporting to make a contract binding only [on] his partially disclosed principal, the agent in fact is acting solely on his own account, he becomes a party to the contract if he comes within a description given therein, or if no description is given and he is not excluded. If he is excluded by the terms of the contract, he is subject to liability under the rules stated in §§ 329-330, dealing with the liability of

UNITED STATES DISTRICT COURT  
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

an agent who does not have power to bind the principal for whom he purports to act.

Restatement (Second) of Agency § 321, com. c (1958). It appears from the language of the comment and the annotations that follow that the section was intended to make a purported agent *liable* by punishing the agent where she enters into a contract for which she does not have the authority to act. *See also* Restatement (Second) of Agency §§ 329-330 (discussing the consequence of imposing tort liability on an agent who enters into a contract without authority). Thus, it does not appear that an agent that does not have the authority to enter the contract in the first place would thereby be rewarded with the power to *enforce* it. Indeed, Plaintiff has cited no authority where a party that improperly asserted its authority to enter into a contract was able to benefit from such conduct. As such, the Court finds Plaintiff's argument unavailing.

In the alternative, Plaintiff argues that there is an "inference" that Plaintiff has standing to sue because "there is still an inference that Plaintiff is a party to the contract with standing to sue." While Plaintiff again cites the Restatement for the proposition that "the inference that the agent is not a party to a contract may be overcome by proving other facts connected with the transaction," Plaintiff fails to offer any facts supporting such an inference. *See* Restatement (Second) of Agency § 321, com. c (1958).

    2.    *PSA*

Plaintiff alleges that she and Defendant agreed upon an oral modification to the Collateral Agreement after Defendant failed to perform under the terms of the Collateral Agreement.[2] The terms of the oral modification were finalized in the PSA. As with the Collateral Agreement,

---

[2] To the extent Plaintiff argues that this oral modification itself is enforceable, the Court notes that where the original contract must be in writing to satisfy the statute of frauds, a subsequent modification must also be in writing. *See* Nev. Rev. Stat. Ann. 104.2209(3) ("The requirements of the statute of frauds section of this Article (NRS 104.2201) must be satisfied if the contract is modified within its provisions). Here, the original contract is "for the sale of goods for the price of $500 or more" and therefore must be in writing. *See* Nev. Rev. Stat. Ann. 104.2201. As such, the modification must also be in writing. *See* Nev. Rev. Stat. Ann. 104.2209(3). The Court also notes that although Defendant argues that the oral modification is not binding because there is no new consideration, under Nevada law, an agreement modifying a contract under the Uniform Commercial Code needs no consideration to be binding. *See* Nev. Rev. Stat. Ann. 104.2209(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

Plaintiff did not have the authority to enter into the PSA on her own accord. Mr. Wynn required that his attorney, Kim Sinatra, review the purchase and sale agreement before it become effective. Emails with Kim Sinatra, Mr. Wynn's attorney, corroborate Mr. Wynn's understanding that Plaintiff did not have the authority to enter into contracts on behalf of Mr. Wynn. *See Breitman Depo. Tr., vol.* 2, Ex. P ("Ms. Breitman has no ability to bind Wynn Macau. Wynn Macau is party to no agreement w/ Mr. Stettner. There is no signed agreement with deadlines as it takes two parties (at least) to have an agreement . . ." "Of course, there is no binding agreement until a formal agreement is signed on behalf of Wynn Macau"). To the extent Plaintiff attempts to argue that the PSA is binding (as the later versions of the agreements were never signed by anyone other than Defendant), the Court finds that Plaintiff did not have the authority to enter into a contract on behalf of Mr. Wynn. Because Plaintiff exceeded the scope of her authority as Mr. Wynn's agent, there was no valid contract.

Thus, because Plaintiff has not shown that there is any material issue of fact as to whether she had the authority to enter into the Collateral Agreement or the PSA, the Court concludes that, even assuming the presence of the exclusive agency agreement, Plaintiff exceeded the scope of the agency agreement with Mr. Wynn and does not have standing to enforce the Collateral Agreement or PSA. As such, Plaintiff is unable to counter Defendant's claim that there is no genuine issue of material fact, and summary judgment is proper.

C.   Interference with Contractual Relations

In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003).

Defendant argues that because Plaintiff did not have the authority to enter into a contract with Defendant on behalf of Mr. Wynn, there is no valid and existing contract. Plaintiff argues that the valid and existing contract at issue is her agency agreement with Wynn. *Opp.* 10:10-11. While this Court explained above that Plaintiff did not have the authority to enter into a contract with Defendant on behalf of Mr. Wynn, this does not necessarily mean that Plaintiff did not have a valid, enforceable Exclusive Agency Agreement with Mr. Wynn. The evidence suggests that Plaintiff may have had an enforceable Exclusive Agency Agreement with Mr. Wynn but that the scope of the Agreement did not permit her to enter into contracts on Mr. Wynn's behalf. Further, Plaintiff claims that Defendant's knowledge of the contract was "a foregone conclusion." While Plaintiff fails to direct the Court to any evidence in support of this position, the Court acknowledges that based on the facts in the record regarding the dealings between Plaintiff and Defendant, as well as the contractual language exchanged by the parties, the Court

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

can reasonably infer that Defendant knew of some type of arrangement between Wynn and Plaintiff. The Court also recognizes that there is sufficient evidence in the record to show that there are material issues of fact as to whether there was an actual disruption of the contract between Plaintiff and Wynn, and whether Plaintiff suffered damages in the form of a lost commission. *See Diane Breitman Depo Tr.*, *vol. 1* at 20:25-22:22 (describing the termination of Plaintiff's agreement with Mr. Wynn).

Nonetheless, Defendant argues that there is no evidence to support the third element, that Plaintiff intentionally acted to disrupt the contractual relationship. As to this element, Plaintiff only offers the Requests for Admission which have since been withdrawn. "At the heart of [an intentional interference] action is whether Plaintiff has proved *intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual relations...." *Id.* (citations omitted) (emphasis in original). Despite five deposition transcripts and ample additional discovery, Plaintiff fails to cite any other evidence from the record to support her claim. Even incorporating evidence cited elsewhere in Plaintiff's Opposition, Plaintiff only refers the Court back to Plaintiff's additional facts, which only incorporate the Requests for Admission. Plaintiff has failed to counter Defendant's claim that there is no triable issue of material fact; as such, summary judgment is proper.

      D.     <u>Interference with Prospective Business Advantage</u>

The following elements must be proven to establish the tort of interference with prospective business advantage: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct. *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88 (1987) (citation omitted). Plaintiff again argues that "Plaintiff had an agency agreement with Wynn" and that "[i]t is a foregone conclusion that [Defendant] knew Plaintiff had a contractual relationship with Wynn." *Opp.* 10:10-13. However, Plaintiff again fails to direct the Court to any evidence in support of elements three, four, and five; Plaintiff again relies solely on admissions that have been withdrawn. Because Plaintiff fails to cite to any additional evidence in the record to support her claim, she fails to counter Defendant's argument that there is no genuine issue of material fact. As such, summary judgment is proper.

      E.     <u>Fraud</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

Under Nevada law, Plaintiff has the burden of proving each and every element of her fraudulent misrepresentation claim by and convincing evidence: (1) A false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. *Bulbman Inc. v. Nevada Bell,* 108 Nev. 105, 110-11 (1992); *Lubbe v. Barba,* 91 Nev. 596, 599 (1975). Further, "[w]here an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper." *Bulbman,* 108 Nev. at 111.

Defendant argues that Plaintiff has not shown any evidence of fraud. The Court agrees. Again, Plaintiff again relies heavily on the admissions that have been withdrawn. Additionally, Plaintiff argues that Defendant falsely represented that he was a buyer of the Wynn Diamond, when he was actually trying to broker its sale; and that he misrepresented that he had funds to purchase the diamond in June 2011. However, Plaintiff has failed to direct the Court to any portion of the record that would support these assertions, nor has the Court discovered any evidence to support the alleged misrepresentations. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Because Plaintiff has failed to offer any evidence showing that Defendant actually made a false representation, Plaintiff has again failed to counter Defendant's argument that there are no issues of material fact, and summary judgment is proper.

F.   Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress under Nevada law, Plaintiff must establish the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation. *Star v. Rabello,* 97 Nev. 124, 125 (1981) (citations omitted).
Defendant argues that Plaintiff has failed to proffer any evidence that would show extreme and outrageous conduct on part of Defendant; nor has Plaintiff testified that she experienced any severe or extreme emotional distress. In fact, Plaintiff testified that after the Wynn Diamond was taken off the market, she did not see a doctor or a therapist for any resulting emotional problems and had experienced no physiological effect from the alleged devastation. *Breitman Depo Tr.*, *vol. 1* at 22:19-25, 23:1-8. Plaintiff does not address this cause of action in her Opposition to the Motion for Summary Judgment and appears to concede that there is no material issue of fact as to whether Defendant is liable for intentional infliction of emotional distress. As such, summary judgment is proper.

UNITED STATES DISTRICT COURT           JS - 6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-2034 PSG (PJWx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | Diane Breitman v. Brett Stettner, et al. | | |

IV.     Conclusion

Thus, based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**.